1  MARC J. FAGEL (Cal. Bar No. 154425)
   fagelm@sec.gov
2  MICHAEL S. DICKE (Cal. Bar No. 158187)
   dickem@sec.gov
3  SHEILA E. O'CALLAGHAN (Cal. Bar No. 131032)
   ocallaghans@sec.gov
4  XAVIER CARLOS VASQUEZ (Cal. Bar No. 194644)
   vasquezc@sec.gov
5
   Attorneys for Plaintiff
6  SECURITIES AND EXCHANGE COMMISSION
   44 Montgomery Street, Suite 2600
7  San Francisco, California 94104
   Telephone: (415) 705-2500
8  Facsimile: (415) 705-2501

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

                    C 07  3945

13

14  SECURITIES AND EXCHANGE COMMISSION,          Case No.

15          Plaintiff,

                                                 COMPLAINT
16      vs.

17  INTEGRATED SILICON SOLUTION, INC. and
    GARY L. FISCHER,
18
            Defendants.
19

20

21      Plaintiff Securities and Exchange Commission (the "Commission") alleges:

22                     **SUMMARY OF THE ACTION**

23      1.     This matter involves improper stock option backdating at Integrated Silicon Solution,

24  Inc. ("ISSI" or the "Company"), a Silicon Valley semiconductor company, resulting in the

25  Company's issuance of false financial statements concealing millions of dollars in compensation

26  expenses. Between 1997 and 2005, ISSI issued over sixty option grants to officers and employees

27  using incorrect grant dates, resulting in a failure to report nearly $32 million in expenses to investors.

28  Defendant Gary L. Fischer, ISSI's then-Chief Financial Officer, President and member of the Board

1  of Directors, picked the backdated option grant dates and directed others to prepare grant documents

2  using the incorrect dates. Fischer personally benefited from the backdating, receiving over $350,000

3  in compensation that was not disclosed in proxy statements as a result of the backdated options.

4       2.      Under well-settled accounting principles in effect throughout the relevant period, ISSI

5  was not required to record an expense in its financial statements for options granted at the market

6  price ("at-the-money"), but *was* required to record expenses for any options granted below the current

7  market price ("in-the-money"). ISSI engaged in a recurring practice of granting in-the-money

8  options to its officers and employees. Fischer backdated the grants to dates on which the stock was

9  trading at significantly lower prices. Fischer directed others to create company records that gave the

10 appearance that the options had been granted at the market price on an earlier date – including the

11 creation of numerous minutes for ISSI's Compensation Committee meetings and numerous

12 resolutions for the Stock Option Committee. In reality, the Compensation Committee rarely met on

13 the purported dates of the minutes, and the Stock Option Committee rarely took any action on the

14 dates of the purported resolutions.

15      3.      As a result, Fischer's actions caused ISSI to materially understate its expenses,

16 overstate its income, and misrepresent in numerous SEC filings that ISSI had incurred no expense for

17 option grants.

18      4.      By engaging in the acts alleged in this Complaint, defendants ISSI and Fischer, among

19 other things, violated the antifraud provisions of the federal securities laws, made or caused to be

20 made materially false or misleading statements to ISSI's auditors, falsified books and records, and

21 caused ISSI to falsely report its financial results. The Commission seeks an order enjoining

22 defendants from future violations of the securities laws, requiring defendant Fischer to disgorge ill-

23 gotten gains with prejudgment interest and to pay civil monetary penalties, barring Fischer from

24 serving as an officer or director of a public company, and providing other appropriate relief.

25                              **JURISDICTION AND VENUE**

26      5.      The Commission brings this action pursuant to Sections 20(b) and 20(d) of the

27 Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and

28 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)].

**COMPLAINT**                                                

6.     This Court has jurisdiction over this action pursuant to Sections 20(c) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(c) and 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. The defendants, directly or indirectly, have made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the acts, practices and courses of business alleged in this complaint.

7.     Venue is proper in this District pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Fischer resides, and ISSI maintains its company headquarters, in the Northern District of California, and acts or transactions constituting violations occurred in this district.

## INTRADISTRICT ASSIGNMENT

8.     Assignment to the San Jose Division is appropriate pursuant to Civil Local Rules 3-2(c) and 3-2(d) because acts and omissions giving rise to the Commission's claims occurred, among other places in this district, in Santa Clara County, where ISSI maintained its corporate headquarters.

## DEFENDANTS

9.     **Integrated Silicon Solution, Inc.** is incorporated in Delaware with headquarters currently in San Jose, California. During the relevant time period, ISSI had headquarters in Santa Clara, California. ISSI is a semiconductor company that designs and markets high performance integrated circuits for digital consumer electronics, networking, mobile communications and automotive electronics. ISSI's common stock is registered under Section 12(b) of the Exchange Act and is listed on the NASDAQ Global Market under the symbol "ISSI."

10.     **Gary L. Fischer**, age 56, of Santa Clara, California, was a director of ISSI from April 2001 through November 2006, was ISSI's Chief Financial Officer from June 1993 to June 2001 and again from November 2002 to November 2005, its Chief Operating Officer from April 2001 to May 2005, and its President from April 2001 to November 2005. Fischer announced his resignation from his executive positions at ISSI in November 2005. Fischer continued to be ISSI's acting CFO until February 2006, and then acted as a consultant until December 2006.

COMPLAINT

# FACTUAL ALLEGATIONS

## A.    ISSI's Options Granting Program

11.    From the mid 1990s to the mid 2000s, ISSI, like many other companies, made liberal use of employee stock options as a form of compensation to recruit, retain, and incentivize employees, officers and directors. Each option gave the grantee the right to buy one share of ISSI common stock from the Company at a set price, called the "exercise" or "strike" price, on a future date after the option vested. The option was "at-the-money" when granted if the trading price of ISSI's common stock and the exercise price were the same. The option was "in-the-money" when granted if the trading price of ISSI's common stock exceeded the option's exercise price. Throughout most of the relevant time period, ISSI's 1998 Stock Plan prohibited granting in-the-money stock options.

12.    ISSI publicly represented, in audited financial statements and other filings with the Commission throughout the relevant period, that its option grants were made at fair market value. In other words, ISSI purported to issue options at-the-money, not in-the-money.

13.    ISSI's public filings affirmatively stated that the Company accounted for its employee stock option plans in accordance with provisions of the Accounting Principles Board's Opinion No. 25, "Accounting for Stock Issued to Employees" ("APB 25"). Under APB 25 and the accounting rules in effect in 1997 through 2005, public companies were required to record an expense on their financial statements for the in-the-money portion of an options grant. According to APB 25, that difference between the exercise price (if lower) and the quoted market price on the date of actual grant was required to be recorded as compensation expense, recognized over the vesting period of the option. Consequently, granting in-the-money options to employees could have a significant impact on the expenses and income (or loss) reported to the shareholders of a public company.

14.    ISSI made the statements about its accounting for stock options in accordance with APB 25 in the notes to its audited financial statements, including in its annual reports to shareholders, filed with the Commission on Form 10-K, for its fiscal years 1997 through 2005. Also, ISSI's annual report filed on Form 10-K for the fiscal years 1997-2002, represented that, following this rule, the Company fixed prices for its options at 100% of fair market value on the date of the grant. In

1    addition, ISSI's proxy statements (which were sent to its shareholders) for the fiscal years 1997 and

2    fiscal years from 1999 to 2005 state that the exercise price of the options grants to executives

3    reflected their fair market value as determined by the Company's board of directors on the date of the

4    grant.

5    **B.    Fischer's Role in ISSI's Stock Option Grant Process**

6    15.    ISSI's primary stock plan allowed ISSI's Board to delegate the grant of options to a

7    board committee, but did not authorize non-board members to either grant options or select an

8    effective grant date. Since at least 1996, ISSI's Board delegated stock option approval to two Board

9    committees: the Stock Option Committee and the Compensation Committee. The Stock Option

10   Committee approved grants for non-officer employees, which were documented in Stock Option

11   Committee resolutions. The Compensation Committee approved grants to officers. These grants

12   were documented in Compensation Committee minutes that purported to record the events of

13   Compensation Committee meetings.

14   16.    Contrary to the stock option plan and the Board's delegation of grant powers to the

15   two committees, Fischer, not the committee members, selected the dates of grants for both officers

16   and employees. The grant dates he selected were then incorporated into the Stock Option Committee

17   resolutions and Compensation Committee minutes.

18   17.    The dates on the resolutions and minutes generally did not reflect the date a granting

19   action took place or a committee meeting occurred. The committee members rarely, if ever, met on

20   the date listed on the minutes and resolutions. Instead, the committee members almost always signed

21   the resolutions and minutes at the Company's regularly scheduled board meetings, which were often

22   held after the effective grant date stated on the grant documents.

23   **C.    The Use of Hindsight to Pick Advantageous Exercise Prices**

24   18.    Between 1997 and 2005, Fischer used his ability to pick grant dates to select dates on

25   which ISSI's stock traded at or near monthly or quarterly lows, and at prices below the closing price

26   on the date when Fischer actually selected the grant date. This resulted in the issuance of in-the-

27   money options; by backdating the grant documents, ISSI created the false appearance that the grants

28   were at-the-money, thus avoiding reporting a compensation charge.

1   19.   According to ISSI's Form 10-K filed on May 30, 2007, the Company determined that

2   63 grants made between 1997 and 2005 were either clearly backdated or appeared to be misdated

3   with original grant prices that were lower than the grant price determined to be correct by the

4   Company. The Company determined that it should have recognized over $29 million in

5   compensation expenses during this period.

6   20.   In certain instances, Fischer selected a grant date that was weeks or even months

7   earlier than when he actually selected the date. For example, on July 6, 2000, Fischer sent an email

8   to an ISSI senior officer suggesting that ISSI grant options backdated to April 2000 and record no

9   expense charge for the grants. At the time Fischer sent his email, ISSI stock was trading at about

10  $32.00. Fischer, however, suggested in his email that ISSI pick a date in April 2000 when ISSI's

11  stock was trading at much lower prices:

12      Use a grant date of [Monday] April 17 and the closing price of that date of

13      $23.125. It is not the lowest of the quarter but follows the lowest date

14      which was Friday April 14. Implies we tried to take advantage of the drop

15      by quickly locking in on the following Monday....Obviously the

16      advantage is no P&L impact plus the person gets the upside of the

17      remaining vesting....To accomplish this we would need the stock

18      committee to approve by approximately July 12 so we can document it all

19      for [ISSI's outside auditors].

20  21.   Although Fischer suggested using the Monday price, the Company actually chose the

21  previous Friday, April 14, as the grant date. ISSI documented the grant for both officers and

22  employees through Compensation Committee minutes and Stock Option Committee resolutions dated

23  April 14, 2000 and reflecting an option price of $18.56 a share – the lowest stock price of that

24  quarter, which gave the grant recipients (including Fischer) in-the-money stock options. Those

25  options were underpriced by $16.82 per share.

26  22.   ISSI did not record a compensation expense related to the "April 14, 2000" grant as

27  required by the relevant accounting rules. For the 51,000 executive options and over 395,000

28  employee options in this grant, ISSI should have recorded a compensation expense of approximately

1   $6 million. Had ISSI appropriately recorded a compensation expense for this option grant, it would

2   have changed its reported 2001 net profit of $1.1 million to a net loss of over $1.9 million.

3       23.    Fischer received 12,000 in-the-money options in the April 14, 2000 backdated grant.

4   Those shares were underpriced by $201,810 at the time of the grant in July 2000.

5       24.    ISSI also backdated options given to ISSI's officers and employees pursuant to

6   voluntary or mandatory "salary reduction programs" in which employees received reduced salaries in

7   exchange for stock option grants. For example, in April 2002, Fischer sent an email to Company

8   employees announcing a salary reduction program in which employees could volunteer to receive

9   stock options in exchange for a reduced salary. Although the employees participating in the program

10  were identified by the end of April 2002, when the stock was trading at around $14, the grant date

11  was not selected by ISSI until months later, after the Company's stock price had declined

12  significantly. In August 2002, Fischer used hindsight to propose a grant date of August 6, 2002,

13  when the company's stock traded at $4.56. ISSI did not record a compensation expense related to

14  this grant.

15      25.    Fischer personally benefited from the low stock price on the "August 6, 2002" grant.

16  He received 9,231 in-the-money options in that grant, which he exercised in January 2004. Fischer's

17  options from this grant were underpriced by $3,600.

18      **D.    ISSI Made False Filings with the Commission**

19      26.    The options backdating practice caused ISSI to materially misstate its financial results

20  during the periods 2000 to 2005. Fischer knew (or was reckless in not knowing) the applicable

21  accounting rules. He was informed no later than 1997 by ISSI's controller that the Company must

22  expense the in-the-money value of stock options, an understanding he confirmed at the time in an

23  email concerning a potential in-the-money option grant.

24      27.    As a public company, ISSI filed with the Commission annual reports that included

25  audited financial statements, certified by the Company's outside auditors. ISSI's failure to record a

26  compensation expense in connection with the backdated, in-the-money option grants resulted in

27  materially overstated net income or understated net losses in its Forms 10-K.

28

**COMPLAINT**                                    -7-

1       28.     On May 30, 2007, ISSI filed a Form 10 K that restated financial results and disclosed

2  that the Company should have recorded compensation expense of over $29 million between 1997 and

3  2005 for 63 grants affecting 13.9 million stock options.  By failing to record compensation charges

4  for the "in-the-money" portions of the backdated grants, ISSI materially overstated its actual net

5  income (as restated), or understated its actual net loss (as restated), as follows: a 25% understatement

6  of net loss in 1999; a 38% overstatement of net income in 2000; a change from $1.1 million net

7  income to a $5.3 million net loss in 2001; a 7% understatement in net loss in 2002; a 13%

8  understatement of net loss in 2003; a 528% overstatement of net income in 2004, and a 5%

9  understatement of net loss in 2005.

10      29.     For the fiscal years 1997 through 2005, Fischer reviewed and signed (as the CFO or as

11  a Director) each of the Forms 10-K.  For the fiscal years 2002 through 2005, Fischer also signed

12  certifications in the Forms 10-K that certified that those Forms did not contain any untrue statement

13  or omission of a material fact and the financial statements in the reports fairly presented in all

14  material respects the financial condition and results of ISSI.

15      30.     ISSI also recorded no compensation expense in connection with the backdated, in-the-

16  money grants to employees and officers in its quarterly reports filed on Forms 10-Q for each of the

17  first three quarters in each fiscal year from 1997 through 2005.  Fischer signed all of ISSI's Forms

18  10-Q for each of the first three quarters in fiscal years 1997 through 2000, the first two quarters of

19  fiscal year 2001, and the first three quarters for fiscal years 2003 through 2005.

20      31.     ISSI filed eleven Forms 8-K, each of which announced the Company's quarterly

21  financial results, that contained materially false and/or misleading financial information because of

22  ISSI's failure to record compensation expenses associated with undisclosed grants of in-the-money

23  stock options (filed on April 24, 2003, July 24, 2003, October 30, 2003, January 12, 2004, April 22,

24  2004, July 22, 2004, October 28, 2004, January 25, 2005, April 25, 2005, July 26, 2005, and

25  November 3, 2005).  Fischer signed each of these false and misleading Forms 8-K.

26      32.     ISSI's proxy statements (which were sent to its shareholders) filed during the fiscal

27  years 1997 and 1999 through 2005, also contained misrepresentations.  Among other things, the

28  discussion on executive compensation falsely states that the exercise price of the options grants

1  reflected their fair market value as determined by the Company's board of directors on the date of the

2  grant. Fischer reviewed these statements prior to filing, and signed the notice of the shareholder

3  meeting accompanying the proxy for all of these years except 2002.

4      33.    Between 1998 and 2002, ISSI sold securities pursuant to six Forms S-8, which

5  incorporated by reference the Company's previously filed Forms 10-K and 10-Q that contained the

6  false statements described above (filed on January 15, 1998, April 22, 1998, April 26, 1999, April 4,

7  2000, March 9, 2001, and March 15, 2002). Fischer signed each of these Forms S-8.

8      34.    After the various grants had been issued, ISSI's auditors received copies of the

9  backdated minutes and resolutions. Fischer was aware that ISSI routinely provided the minutes and

10  resolutions to the auditors in connection with its audit work. Beginning in October 2003 and

11  continuing through December 2005, management representation letters to the auditors signed by

12  Fischer listed the purported dates of Stock Committee and Compensation Committee meetings.

13  Those dates were taken from the minutes and resolutions and were false as the committees seldom

14  met or took any action on the represented dates.

15      35.    Fischer both signed and caused to be filed with the Commission false Forms 5,

16  purporting to represent his annual statements of changes in beneficial ownership of ISSI securities,

17  that incorrectly disclosed the grant dates for his options (filed on November 10, 1997, November 13,

18  2000, November 8, 2001, and November 12, 2002).

19      **E.    Fischer Received Ill-Gotten Gains from the Backdated Grants**

20      36.    Fischer received undisclosed backdated options that were in-the-money, and exercised

21  certain of those options.

22                          **FIRST CLAIM FOR RELIEF**
                          *(Violations of Section 10(b) of the*
23                  *Exchange Act and Rule 10b-5 Thereunder by Defendants)*

24      37.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

25  above.

26      38.    By engaging in the conduct described above, ISSI and Fischer, directly or indirectly,

27  in connection with the purchase or sale of securities, by the use of means or instrumentalities of

28  interstate commerce, or the mails, with scienter:

**COMPLAINT**                        -9-

1          (a)    employed devices, schemes, or artifices to defraud;

2          (b)    made untrue statements of material facts or omitted to state material facts

3                 necessary in order to make the statements made, in the light of the

4                 circumstances under which they were made, not misleading; and

5          (c)    engaged in acts, practices, or courses of business which operated or would

6                 operate as a fraud or deceit upon other persons, including purchasers and

7                 sellers of securities.

8      39.    By reason of the foregoing, ISSI and Fischer have violated, and unless restrained and

9 enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule

10 10b-5 thereunder [17 C.F.R. § 240.10b-5].

11 **SECOND CLAIM FOR RELIEF**

12 *(Violations of Section 17(a)(1) of the Securities Act by Defendants)*

13      40.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

14 above.

15      41.    By engaging in the conduct described above, ISSI and Fischer, directly or indirectly,

16 in the offer or sale of securities, by use of the means or instruments of transportation or

17 communication in interstate commerce or by use of the mails with scienter employed devices,

18 schemes, or artifices to defraud.

19      42.    By reason of the foregoing, ISSI and Fischer violated, and unless restrained and

20 enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)].

21 **THIRD CLAIM FOR RELIEF**

22 *(Violations of Sections 17(a)(2) and (3) of the Securities Act by Defendants)*

23      43.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

24 above.

25      44.    By engaging in the conduct described above, ISSI and Fischer, directly or indirectly,

26 in the offer or sale of securities, by use of the means or instruments of transportation or

27 communication in interstate commerce or by use of the mails:

28

(a)  obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(b)  engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

45.  By reason of the foregoing, ISSI and Fischer have violated, and unless restrained and enjoined, will continue to violate Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (3)].

## FOURTH CLAIM FOR RELIEF
*(False Statements and Omissions to Accountants and Auditors—
Violation of Rule 13b2-2 by Fischer)*

46.  The Commission realleges and incorporates by this reference Paragraphs 1 through 36, above.

47.  By engaging in the acts and conduct alleged above, Fischer, directly or indirectly, made or caused to be made a materially false or misleading statements or omitted to state or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading to an accountant in connection with an audit or examination of the financial statements of ISSI required to be made or the preparation or filing of reports required to be filed by ISSI with the Commission.

48.  By reason of the foregoing, Fischer has violated and, unless restrained and enjoined, will continue to violate Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

## FIFTH CLAIM FOR RELIEF
*(False Periodic Reports—Violations of and Aiding and Abetting
Violations of Section 13(a) of the Exchange Act and Rules 12b-20,
13a-1, 13a-11 and 13a-13 Thereunder by Defendants)*

49.  The Commission realleges and incorporates by this reference Paragraphs 1 through 36, above.

50.  Based on the conduct alleged above, ISSI violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§

1  240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13], which obligate issuers of securities registered

2  pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] to file with the Commission accurate

3  annual, quarterly, and current reports.

4        51.    By engaging in the conduct alleged above, Fischer knowingly provided substantial

5  assistance to ISSI's filing of materially false and misleading reports with the Commission.

6        52.    By reason of the foregoing, ISSI violated Section 13(a) of the Exchange Act [15

7  U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20,

8  240.13a-1, 240.13a-11, and 240.13a-13]. Unless restrained and enjoined, ISSI will continue to

9  violate Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11,

10  and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

11        53.    By reason of the foregoing, Fischer aided and abetted violations by ISSI of Section

12  13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, 13a-11, and 13a-13

13  thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13]. Unless restrained and

14  enjoined, Fischer will continue to aid and abet such violations.

15                            **SIXTH CLAIM FOR RELIEF**

16  *(False Certifications–Violations of Rule 13a-14 under*
*the Exchange Act by Fischer)*

17        54.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

18  above.

19        55.    Based on the conduct alleged above, Fischer signed, as ISSI's principal financial

20  officer, false certifications pursuant to Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14]

21  that were included in ISSI's 2002, 2003, 2004 and 2005 annual reports filed on Forms 10-K.

22        56.    By reason of the foregoing, Fischer violated Rule 13a-14 of the Exchange Act [17

23  C.F.R. § 240.13a-14]. Unless restrained and enjoined, Fischer will continue to violate Rule 13a-14 of

24  the Exchange Act [17 C.F.R. § 240.13a-14].

25                       **SEVENTH CLAIM FOR RELIEF**

26  *(Inaccurate Books and Records—Violations of and Aiding and Abetting*
*Violations of Section 13(b)(2)(A) of the Exchange Act by Defendants)*

27        57.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

28  above.

1    58.    Based on the conduct alleged above, ISSI violated Section 13(b)(2)(A) of the

2  Exchange Act [15 U.S.C. § 78m(b)(2)(A)], which obligates issuers of securities registered pursuant to

3  Section 12 of the Exchange Act [15 U.S.C. § 78l] to make and keep books, records and accounts

4  which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets

5  of the issuer.

6    59.    By engaging in the conduct alleged above, Fischer knowingly provided substantial

7  assistance to ISSI's failure to make and keep books, records and accounts which, in reasonable detail,

8  accurately and fairly reflect its transactions and dispositions of its assets.

9    60.    By reason of the foregoing, ISSI violated Section 13(b)(2)(A) of the Exchange Act [15

10  U.S.C. § 78m(b)(2)(A)].  Unless restrained and enjoined, ISSI will continue to violate Section

11  13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

12    61.    By reason of the foregoing, Fischer aided and abetted violations by ISSI of Section

13  13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].  Unless restrained and enjoined,

14  Fischer will continue to aid and abet such violations.

15                            **EIGHTH CLAIM FOR RELIEF**
                *(Inadequate Internal Accounting Controls—Violations of and Aiding and Abetting*
16               *Violations of Section 13(b)(2)(B) of the Exchange Act by Defendants)*

17    62.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

18  above.

19    63.    Based on the conduct alleged above, ISSI violated Section 13(b)(2)(B) of the

20  Exchange Act [15 U.S.C. § 78m(b)(2)(B)], which obligates issuers of securities registered pursuant to

21  Section 12 of the Exchange Act [15 U.S.C. § 78l] to devise and maintain a sufficient system of

22  internal accounting controls.

23    64.    By engaging in the conduct alleged above, Fischer knowingly provided substantial

24  assistance to ISSI's failure to devise and maintain a sufficient system of internal accounting controls.

25    65.    By reason of the foregoing, ISSI violated Section 13(b)(2)(B) of the Exchange Act [15

26  U.S.C. § 78m(b)(2)(B)].  Unless restrained and enjoined, ISSI will continue to violate Section

27  13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

28

1    66.    By reason of the foregoing, Fischer has aided and abetted violations by ISSI of Section

2  13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)]. Unless restrained and enjoined,

3  Fischer will continue to aid and abet such violations.

4                          **NINTH CLAIM FOR RELIEF**
                    *(Falsifying Books and Records or Circumventing Internal Accounting*
5           *Controls—Violation of Section 13(b)(5) of the Exchange Act by Fischer)*

6    67.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

7  above.

8    68.    By the conduct alleged above, Fischer violated Section 13(b)(5) of the Exchange Act

9  [15 U.S.C. § 78m(b)(5)] which prohibits anyone from knowingly circumventing a system of internal

10  accounting, or knowingly falsifying certain books, records, and accounts.

11    69.    Unless restrained and enjoined, Fischer will continue to violate Section 13(b)(5) of the

12  Exchange Act [15 U.S.C. § 78m(b)(5)].

13                          **TENTH CLAIM FOR RELIEF**
                          *(Falsifying Books and Records—Violation of*
14                        *Rule 13b2-1 of the Exchange Act by Fischer)*

15    70.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

16  above.

17    71.    By engaging in the conduct described above, Fischer falsified or caused to be falsified

18  ISSI's books, records and accounts in violation of Rule 13b2-1 under the Exchange Act [17 C.F.R. §

19  240.13b2-1].

20    72.    Fischer has violated and, unless restrained and enjoined, will continue to violate, Rule

21  13b2-1 under the Exchange Act [17 C.F.R. § 240.13b2-1].

22                      **ELEVENTH CLAIM FOR RELIEF**
                *(False Proxy Statements—Violations and Aiding and Abetting Violations*
23       *of Section 14(a) of the Exchange Act and Rule 14a-9 Thereunder by Defendants)*

24    73.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

25  above.

26    74.    Based on the conduct alleged above, ISSI violated Section 14(a) of the Exchange Act

27  [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9], which prohibits solicitations

28  by means of a proxy statement, form of proxy, notice of meeting or other communication, written or

COMPLAINT                    -14-

1  oral, that contain a statement which, at the time and in the light of the circumstances under which it

2  was made, was false or misleading with respect to any material fact, or which omit to state any

3  material fact necessary in order to make the statements therein not false or misleading or necessary to

4  correct any statement in any earlier communication with respect to the solicitation of a proxy for the

5  same meeting or subject matter which had become false or misleading.

6      75.    By engaging in the conduct alleged above, Fischer knowingly provided substantial

7  assistance to ISSI's false or misleading proxy statements.

8      76.    By reason of the foregoing, ISSI violated Section 14(a) of the Exchange Act [15

9  U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9] thereunder.  Unless restrained

10  and enjoined, ISSI will continue to violate Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)]

11  and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9].

12     77.    By reason of the foregoing, Fischer has aided and abetted violations by ISSI of Section

13  14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9].

14  Unless restrained and enjoined, Fischer will continue to aid and abet such violations.

15                          **TWELFTH CLAIM FOR RELIEF**

16              *(Beneficial Ownership Reporting—Violations of Section 16(a)*
                  *of the Exchange Act and Rule 16a-3 Thereunder by Fischer)*

17     78.    The Commission realleges and incorporates by this reference Paragraphs 1 through 36,

18  above.

19     79.    Based on the conduct alleged above, Fischer violated Section 16(a) of the Exchange

20  Act [15 U.S.C. § 78p(a)] and Rule 16a-3 [17 C.F.R. § 240.16a-3] thereunder, which require officers,

21  directors and beneficial owners of more than ten percent of any class of equity security registered

22  pursuant to Exchange Act Section 12 [15 U.S.C § 78l] to file periodic reports disclosing any change

23  of beneficial ownership of those securities.

24     80.    Fischer violated and, unless restrained and enjoined, will continue to violate, Section

25  16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rule 16a-3 [17 C.F.R. § 240.16a-3] thereunder.

26                              **PRAYER FOR RELIEF**

27        WHEREFORE, the Commission respectfully requests that this Court:

28

## I.

Permanently enjoin ISSI from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Exchange Act  [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), 78m(b)(2)(B), and 78n(a)], and Rules 10b-5, 12b-20, 13a-1, 13a-11, 13a-13, and 14a-9 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, and 240.14a-9];

## II.

Permanently enjoin Fischer from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Sections 10(b), 13(b)(5), and 16(a) of the Exchange Act  [15 U.S.C. §§ 78j(b), 78m(b)(5), and 78p(a)], and Rules 10b-5, 13a-14, 13b2-1, 13b2-2, and 16a-3 thereunder [17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, 240.13b2-2, and 240.16a-3], and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), 78m(b)(2)(B), and 78n(a)] and Rules 10b-5, 12b-20, 13a-1, 13a-11, 13a-13, and 14a-9 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, and 240.14a-9];

## III.

Prohibit Fischer, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any entity having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

## IV.

Order Fischer to disgorge any wrongfully obtained benefits, including prejudgment interest;

## V.

Order Fischer to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

## VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that

COMPLAINT

1    may be entered, or to entertain any suitable application or motion for additional relief within the

2    jurisdiction of this Court; and

3                                              VII.

4        Grant such other and further relief as this Court may determine to be just and necessary.

5

6    DATED:    July 31, 2007                    Respectfully Submitted,

7

8

9                                              Marc J. Fagel
                                               Michael S. Dicke
10                                             Sheila O'Callaghan
                                               Xavier Carlos Vasquez
11                                             Attorney for Plaintiff
                                               SECURITIES AND EXCHANGE COMMISSION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**                              -17-